**Ex parte Bernardo Morin PEREZ.**

**No. 66762.**

Court of Criminal Appeals of Texas, En Banc.

March 11, 1981.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

Perez seeks habeas corpus relief from a final conviction for aggravated rape, alleging that he was prosecuted on a fundamentally defective indictment. The indictment alleged that on or about August 6, 1974, he

"did then and there unlawfully, by force and threats, and without the consent of A_____ F_____ P_____, ravish and have sexual intercourse with A_____ F_____ P_____, a female not then and there the wife of the said Bernardo Morin Perez, and the said Bernardo Morin Perez did compel submission by A_____ F_____ P_____ to said ravishment and sexual intercourse by threatening to inflict death and serious bodily injury to the said A_____ F_____ P_____."

A culpable mental state is an essential element of the offense of aggravated rape. *North v. State*, 598 S.W.2d 634 (Tex.Cr.App.1980); *Stidham v. State*, 590 S.W.2d 502 (Tex.Cr.App.1979); *Banks v. State*, 586 S.W.2d 518 (Tex.Cr.App.1979). The failure of an indictment to allege such an element renders it fundamentally defective, and habeas corpus relief will be granted. *Zachery v. State*, 552 S.W.2d 136 (Tex. Cr.App.1977) (indictment alleged "did then and there unlawfully attempt by force and threats to have sexual intercourse without the consent of Melonee Randall, a female not his wife and hereafter styled the Complainant, by choking her and beating her with his hands").

The relief requested is granted. The applicant is ordered released from any restraint in his liberty imposed by the indictment, judgment, or sentence in cause 7322 of the 23rd Judicial District Court of Wharton County.

McCORMICK, Judge, dissenting.

Although deference should be paid to the precedence relied upon by the majority opinion in granting petitioner's relief, I am constrained to urge a re-examination of the principles upon which such precedence is based.

Beginning with this Court's decision in *Braxton v. State*, 528 S.W.2d 844 (Tex.Cr. App.1975), and continuing to the present, there has been a misapplication of V.T.C.A. Penal Code, Section 6.02 to V.T.C.A. Penal Code, Sections 21.02 and 21.03.

With the passage of the 1974 Penal Code (hereinafter referred to as the Code), the concept of culpability was first given some appearance of uniformity. Chapter 6 of the Code defines culpability generally. It must be remembered that Titles 1, 2, and 3 of the Code "apply to offenses defined by other laws, unless the statute defining the offense provides otherwise." V.T.C.A. Penal Code, Section 1.03(b). Chapter 6 of the Code is found in Title 2. The drafters of the Code were, in effect, saying that in addition to the offenses defined within the Code, the general culpability provisions were to apply to offenses defined in statutes other than the Code. This was part of an overall effort to attempt to bring uniformity to the criminal law as well as provide some guidance for future legislation that carried criminal penalties.

With the exception of a minor amendment to Section 6.01(a) in 1975, Chapter 6 of the Code has remained in the same form as originally passed. Section 6.01 sets forth the requirements of voluntary acts or omissions and establishes the general guidelines relating to the *actus reus* of criminal conduct. Similarly, Section 6.02 establishes the philosophy as relates to the *mens rea*.

Section 6.02 provides:

"(a) Except as provided in Subsection (b) of this section, a person does not commit an offense unless he intentionally, knowingly, recklessly, or with criminal negligence engages in conduct as the definition of the offense requires.

"(b) If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element.

"(c) If the definition of an offense does not prescribe a culpable mental state, but one is nevertheless required under Subsection (b) of this section, intent, knowledge, or recklessness suffices to establish criminal responsibility.

"(d) Culpable mental states are classified according to relative degrees, from highest to lowest, as follows:

"(1) intentional;

"(2) knowing;

"(3) reckless;

"(4) criminal negligence.

"(e) Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged."

It is the provisions of subsections (b) and (c) that have created the problem exemplified by the majority opinion in the case at bar. Since the passage of the Code, this Court has attempted to impose the requirements of Sections 6.02(b) and (c) to those offenses defined within the Code itself, ignoring the fact that the drafters intended exactly what they wrote and intended in many instances to dispense with a *mens rea* requirement. Imposition of a knowing, intentional, or reckless culpable mental state upon a prosecution for a violation of V.T.C.A. Penal Code, Sections 21.02(b)(1) and (b)(2) is contrary to the express intent of the Legislature.

V.T.C.A. Penal Code, Section 21.02, provides:

"(a) A person commits an offense if he has sexual intercourse with a female not his wife without the female's consent.

"(b) The intercourse is without the female's consent under one or more of the following circumstances:

"(1) he compels her to submit or participate by force that overcomes such earnest resistance as might reasonably be expected under the circumstances;

"(2) he compels her to submit or participate by any threat, communicated by actions, words, or deeds, that would prevent resistance by a woman of ordinary resolution, under the same or similar circumstances, because of a reasonable fear of harm;

"(3) she has not consented and he *knows* she is unconscious or physically unable to resist;

"(4) he *knows* that as a result of mental disease or defect she is at the time of the intercourse incapable either of appraising the nature of the act or of resisting it;

"(5) she has not consented and he *knows* that she is unaware that sexual intercourse is occurring;

"(6) he *knows* that she submits or participates because she erroneously believes that he is her husband; or

"(7) he has *intentionally* impaired her power to appraise or control her conduct by administering any substance without her knowledge.

"(c) An offense under this section is a felony of the second degree." (Emphasis supplied)

An examination of the above statute reveals that a culpable mental state is required only in reference to determining consent when an offense is alleged under the provisions of subsections 21.02(b)(3) through (b)(7). I cannot perceive, nor do I believe the drafters of the Code could perceive, of a fact situation wherein an offense committed under subsections 21.02(b)(1) or (b)(2) would require alleging and proving a culpable mental state. Under these two situations, the Legislature clearly dispensed with the requirement of a culpable mental state, and created a "strict liability" offense wherein the conduct in and of itself demonstrates the required culpability.

In construing the provisions of the Code, this Court is required by the Code Construction Act (Article 5429b–2, V.T.C.S.) and the rules of statutory construction to presume that the Legislature selected and used language in a careful and deliberate manner. The general rules of constructions may be summarized:

"Every word or phrase is presumed to have been used intentionally, with a

meaning and purpose, especially when the language consists of an adopted phrase, or bears evidence of having been chosen with care, or is a phrase of long and frequent usage in the same connection or others involving a similar principle of construction. Where the statutory language is plain and unambiguous, and expresses a single definite and sensible meaning, it is conclusively presumed that the legislature intended to convey that meaning. In such a case, it is further presumed that if the legislature had not intended an expression to convey its plain meaning it would have said so, or would have used a different term, and would not have left the matter entirely to implication." 53 Tex.Jur.2d, Statutes, Section 181, pages 270–271.

The same rules should apply to the failure of the Legislature to include language. When the entire Code is examined, it is easily seen that the Legislature was careful to include either "knowingly, intentionally, recklessly, or with criminal negligence" as dictated by the nature of the offense defined. This becomes even more apparent when the provisions of Section 21.02, supra, are examined.

Rape committed in violation of subsections (b)(1) and (b)(2) are of the forceful nature and the language defining these two modes of committing the offense do not contain or imply that the Legislature intended that such be done "knowingly or intentionally." It is apparent that the commission of the offense as specifically set forth in these two subsections is all that is required to be alleged or proven. Interestingly, the Legislature, in defining the offense in subsections (b)(3) through (b)(7) included the requirement that the act be done with knowledge or intentionally. Such a construction would not be contrary to the previous holdings of this Court. Cf. *Johnson v. State*, 587 S.W.2d 16 (Tex.Cr. App.1975); *Holcomb v. State*, 573 S.W.2d 814 (Tex.Cr.App.1978), wherein this Court has held that in burglary cases the entry with intent to commit theft or some other felony is sufficient and *has not* held that the entry must be knowingly or intentionally made. Further, some forty states do not require a specific intent in forcible rape prosecutions.[1]

It should also be noted that all the offenses under Penal Code, Chapter 21, Sexual Offenses, when they could possibly occur negligently, require an intent. For example, Section 21.01(2) defines sexual contact with the "*intent* to arouse or gratify the sexual desire of any person." (Emphasis supplied). Indecent exposure occurs whenever the person has the "*intent* to arouse or gratify ... and he is *reckless*...." (Emphasis supplied). Section 21.08, supra. Sexual abuse of a child, under Section 21.-10(a), must also have the accompanying "intent to arouse...." Section 21.11 allows two methods of indecency with a child:

1. See, Ala.Code 13–1–112 et seq. (1975 & Supp. 1980); Alaska Stat. § 11.41.410 (Supp.1980); Ark.Stat.Ann. § 41–1803 (1979); Cal.Penal Code § 261 (West 1970); Conn.Gen.Stat.Ann. § 53a–70 (West 1972); Fla.Stat.Ann. § 794.011 (West 1976); Ga.Code Ann. § 26–2001 (Supp. 1980); Idaho Code § 18–6101 (1979); Ill.Ann. Stat. Ch. 38, § 11–1 (Smith-Hurd 1979); Iowa Code Ann. § 709.1 (West 1979); Kan.Stat.Ann. § 21–3502 (Supp.1980); Ky.Rev.Stat. § 510.040 (1975); La.Rev.Stat.Ann. § 14:41 (West Supp. 1981); Me.Rev.Stat. tit. 17A, § 252 (1965 & Supp.1980–81); Md.Code Ann. Art. 27, § 462 (Supp.1980); Mass.Ann.Laws Ch. 265, § 22 (Michie/Law. Co-op Supp.1980); Mich.Comp. Laws Ann. § 750:520a et seq. (Supp.1980–81); Minn.Stat.Ann. § 609.342 et seq. (West Supp. 1981); Miss.Code Ann. § 97–3–67 (Supp.1980); Mo.Ann.Stat. § 566.030 (Vernon Supp.1981); Neb.Rev.Stat. § 28–408.02 et seq. (1979); Nev. Rev.Stat. § 200.364 et seq. (1979); N.H.Rev. Stat.Ann. § 632–A:1 et seq. (Supp.1979); N.J. Stat.Ann. § 2C:14–1 (West Supp.1980); N.C. Gen.Stat. § 14–27.2 (Supp.1979); N.Y.Penal Laws § 130.20 et seq. (McKinney 1975); Ohio Rev.Code Ann. § 2907.02 (Baldwin 1979); Okl. Stat.Ann. tit. 21, § 1111 (West 1958); Or.Rev. Stat. § 163.355 et seq. (1979); Pa.Stat.Ann. tit. 18 § 3121 (Purdon 1973); R.I.Gen.Laws § 11–37–1 et seq. (Supp.1980); S.C.Code § 16–3–652 (Supp.1976); S.D.Compiled Laws Ann. § 22–22–1 (Supp.1980); Tenn.Code Ann. § 39–3705 (Supp.1980); Utah Code Ann. § 76–5–402 (Supp.1979); Vt.Stat.Ann. tit. 13, § 3252 (Supp. 1980); Va.Code § 18.2–61 (1976); Wash.Rev. Code Ann. § 9A:44:040 (Supp.1981); W.Va. Code § 61–8B–3 (1977); Wis.Stat.Ann. § 940.-225 (West Supp.1980–81); Wyo.Stat. § 6–4–301 et seq. (1977).

either through sexual contact [Section 21.-01(2) (intent to arouse)]; or, exposure with "*intent* to arouse...." (Emphasis supplied). Public Lewdness, Section 21.07, requires "knowingly or reckless." Sexual Abuse, (Section 21.04), Aggravated Sexual Abuse (Section 21.05), Homosexual Conduct (Section 21.06), and Rape of a Child (Section 21.09), all follow rape and cannot possibly occur negligently.

It is my firm belief that the Legislature, in drafting and passing Section 21.02 of the Code intentionally and deliberately dispensed with a requirement of alleging and proving a culpable mental state in prosecutions under subsections (b)(1) and (b)(2), acts which clearly demonstrated the intent. This Court should take this opportunity to reject the previous holdings to the contrary.

Furthermore, even if this Court is compelled to find error has occurred, it is not reversible error. Articles 21.04 and 21.11, V.A.C.C.P. Instead of the strict "fundamental error" reversal that automatically follows, a more favorable approach is that utilized by courts in the federal system. The federal courts have an analogous fundamental defect rule. However, on appeal they approach defective indictments in favor of validity. *United States v. Wander*, 601 F.2d 1251 (3rd Cir. 1979); *United States v. Peterson*, 592 F.2d 1035 (9th Cir. 1979).

This logical approach was stated aptly in *United States v. Pheaster*, 544 F.2d 353, at 361 (9th Cir. 1976):

"... [A]lthough such defects are never waived, indictments which are tardily challenged are liberally construed in favor of validity. For example, this Court held that when an indictment is not challenged before the verdict, it is to be upheld on appeal if ' "the necessary facts appear in any form or by fair construction can be found within the terms of the indictment." ' *Kaneshiro v. United States*, 445 F.2d 1266, 1269 (9 Cir.), cert. denied, 404 U.S. 992, 92 S.Ct. 537, 30 L.Ed.2d 543 (1971), quoting *Hagner v. United States*, 285 U.S. 427, 433, 52 S.Ct. 417 [419], 76 L.Ed. 861 (1932). See Wright, *Federal Practice and Procedure* :

Criminal § 123, at 225–226. In our view, the same standard should apply here, where the challenge came in a motion for acquittal after all evidence had been received. Such a long delay in raising the issue suggests a *purely tactical motivation of incorporating a convenient ground of appeal in the event the jury verdict went against the defendants. Furthermore, the fact of the delay tends to negate the possibility of prejudice in the preparation of the defense ....*" (Emphasis supplied).

I can only conclude that the indictment contained the elements of rape, sufficiently apprising appellant of what he must be prepared to meet, and adequate to support a double jeopardy claim in a subsequent proceeding. *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962).

The relief requested should be denied.