

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-20-00238-CR

**EX PARTE RODGER CLAYCOMB, APPELLANT**

On Appeal from the 140th District Court
Lubbock County, Texas
Trial Court No. 2019-001,978, Honorable Jim Bob Darnell, Presiding

November 22, 2022

## OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

After a Lubbock County grand jury indicted Rodger Claycomb under Texas Penal Code section 33.07(a), he filed a pretrial application for writ of habeas corpus, arguing that the statute violates the First Amendment to the United States Constitution because it is overly broad on its face. The trial court denied Claycomb's challenge, so he brings the present appeal.

We hold that section 33.07(a) does not involve speech. In the event that some protected speech is implicated, the restriction is not content-based and therefore not subject to strict scrutiny. Further, because Claycomb did not show the trial court how

section 33.07 fails to satisfy intermediate scrutiny or is void for vagueness, we hold that such issues were not preserved for appellate review. TEX. R. APP. P. 33.1(a). We affirm the trial court's order denying Claycomb's pretrial application for writ of habeas corpus.

## Background

By indictment issued in July 2018, Claycomb was alleged to have, with the intent to harm complainant A.B., used A.B.'s name without obtaining her consent to create a webpage on the Internet website "XHamster." Claycomb filed a pretrial application for writ of habeas corpus. In that application, Claycomb argued solely that the statute is unconstitutionally overbroad on its face under the First Amendment because it is a content-based restriction.[1] On August 5, 2020, the trial court signed an order denying Claycomb's application.

## Analysis

A defendant may file a pretrial application for a writ of habeas corpus to raise a facial challenge to the constitutionality of a statute defining the charged offense. *Ex parte Thompson*, 442 S.W.3d 325, 333 (Tex. Crim. App. 2014). A facial challenge attacks the

---

[1] Claycomb argued in his application, "It is not possible to determine whether a defendant has 'use[d] the name of [sic] persona of another person to . . . create a web page . . . or . . . post or send one or more messages without looking at the content of the speech (the web page, post or message) in question,'" and "[h]armful online speech is harmful because of its content. Section 33.07(a) cannot be justified without reference to the content of the regulated speech."

Claycomb did not argue to the trial court that section 33.07 restricts a real and substantial amount of protected noncommercial speech in relation to its legitimate sweep. His brief acknowledges he did not raise a vagueness challenge in the trial court, but urges that "if this Court narrows the statute it must confront the vagueness problem that doing so creates."

statute itself rather than the statute's application to the defendant. *Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015).

Whether a statute is facially constitutional is a question of law subject to review de novo. *Ex Parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). We begin with the presumption that the statute is valid and that the Legislature has not acted unreasonably or arbitrarily. *Id.* at 14–15. "[I]f a statute can be construed in two different ways, one of which sustains its validity, we apply the interpretation that sustains its validity." *Duncantell v. State*, 230 S.W.3d 835, 843 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). Ordinarily, the party challenging the statute carries the burden of establishing the statute's unconstitutionality. *Lo*, 424 S.W.3d at 15.

## A. Does section 33.07(a) regulate conduct or speech?

The Free Speech Clause of the First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. CONST. amend. I. The First Amendment became applicable to the States under the Due Process Clause of the Fourteenth Amendment; *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 489 n.1 (1996), and generally protects the free communication and receipt of ideas, opinions, and information. *Scott v. State*, 322 S.W.3d 662, 668 (Tex. Crim. App. 2010), *disavowed on other grounds by Wilson v. State*, 448 S.W.3d 418, 423 (Tex. Crim. App. 2014). The expression of ideas via posts on the Internet and social media are potentially subject to First Amendment protections. *See Mahanoy Area Sch. Dist. v. B.L.*, 141 S. Ct. 2038, 2047 (2021); *Reno v. ACLU*, 521 U.S. 844, 870 (1997).

On the other hand, non-expressive conduct is entitled to no First Amendment protection. *See Ex parte Barton*, No. PD-1123-19, 2022 Tex. Crim. App. LEXIS 235, at *14 (Tex. Crim. App. Apr. 6, 2022); *Scott*, 322 S.W.3d at 670 ("[W]e believe that the conduct to which the statutory subsection is susceptible of application will be, in the usual case, essentially noncommunicative, even if the conduct includes spoken words.").

At issue in the present appeal is section 33.07(a), which provides in relevant part:

> A person commits an offense if the person, without obtaining the other person's consent and with the intent to harm . . . uses the name . . . of another person to:
>
> (1)   create a web page on a commercial social networking site or other Internet website . . . .

TEX. PENAL CODE ANN. § 33.07(a)(1) (ellipses added).[2]   The parties disagree about whether language proscribing the "use" of one's name to create a web page regulates speech or conduct.   According to Claycomb, "section 33.07(a)(1) imposes liability for referring to others (including businesses), without impersonating them, with the intent to harm anyone."  The State, consistent with the trial court's conclusions of law, asserts that the conduct proscribed by the statute "is necessarily connected to and will tend to involve speech," but that such speech is integral to criminal conduct.

The verb "use" is not statutorily defined, so we shall construe the term according to common usage; we may consult a standard or legal dictionary to perform our task.

---

[2] We restrict our review to the violations of the statute as alleged in the indictment.  *See State v. Stubbs*, 502 S.W.3d 218, 223 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (holding that the trial court lacked jurisdiction to declare the entirety of section 33.07 unconstitutional because defendant was only indicted under section 33.07(a)); *Limon v. State*, 947 S.W.2d 620, 625 (Tex. App.—Austin 1997, no writ) (holding that because appellants were not charged with certain portions of Penal Code, they lacked standing to assert constitutionality challenge to those provisions).

*State v. Hardin*, No. PD-0799-19, 2022 Tex. Crim. App. LEXIS 757, at *9 (Tex. Crim. App. Nov. 2, 2022).  According to Webster's, the verb "use" means "to put or bring into action or service; to employ for or apply to a given purpose."  WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 2012 (2nd ed. 1983).  This definition is very similar to that employed by our sister court in *Stubbs*: "to employ for the accomplishment or achievement of a purpose, or to apply to oneself."[3]

Claycomb's argument that using a name is the equivalent of "referring to" a person or business ignores other portions of the statute.  A mere subsection after 33.07(a), the Legislature chose the verb "references" in place of "use" to prohibit unauthorized conduct related to "a name, domain address, phone number, or other item of identifying information belonging to any person."  Under the presumption of consistent usage, the rules of statutory construction require that we "presume that the Legislature selected and used language in a careful and deliberate manner[,]" and "[t]he same rules should apply to the failure of the Legislature to include language."  *Ex parte Kibler*, Nos. WR-91,197-01, WR-91,197-02, 2022 Tex. Crim. App. LEXIS 622, at *16–17 (Tex. Crim. App. Sep. 21, 2022) (quoting *Ex parte Perez*, 612 S.W.2d 612, 614 (Tex. Crim. App. 1981)).  In other words, had the Legislature intended for section 33.07(a) to prohibit one from making unauthorized *reference* to another's name in a website or web page, it could have used uniform language throughout.  Adopting Claycomb's proposed argument that "use" is the functional equivalent of "references" (or "refer to") would not only ignore the intended variation in meaning but would also render surplusage the Legislature's use of the verbs actually used*.  See In re CVR Energy, Inc.*, 500 S.W.3d 67, 77 (Tex. App.—Houston [1st

---

[3] *Stubbs*, 502 S.W.3d at 225 (citing NEW OXFORD AMERICAN DICTIONARY 1907 (3d ed. 2010)).

Dist.] 2016, no pet.). *See also* Antonin Scalia and Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 170 (Thomson/West 2012). We construe the relevant portion of section 33.07(a) as prohibiting one from employing the name of another without permission for the purpose of creating a website or web post.

But does using someone's name within this context constitute speech? We find instruction through a series of decisions by the Court of Criminal Appeals' efforts to construe section 42.07 of the Texas Penal Code. In *Scott*, the court assessed section 42.07(a)(4), which prohibited individuals with the intent to inflict emotional distress from "making repeated telephone communications . . . in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another." 322 S.W.3d at 669. Notwithstanding the statute's focus on "telephone communications," the court held that the statute is not susceptible to constitutionally-protected communicative conduct, and therefore did not implicate the First Amendment. *Id.* at 669. The court observed that the statute's plain text is directed at persons who "repeatedly *use* the telephone to invade another person's personal privacy and do so in a manner reasonably likely to inflict emotional distress." *Id.* at 669–70 (emphasis added). "[I]n the usual case, persons whose conduct violates section 42.07(a)(4) will not have an intent to engage in the legitimate communication of ideas, opinions, or information; they will have only the intent to inflict emotional distress for its own sake." *Id.* at 670.

This spring, the Court of Criminal Appeals reached conclusions similar to its decision in *Scott* when assessing section 42.07 (a)(7) of the Texas Penal Code. At issue

6

in *Ex parte Sanders*[4] and *Ex parte Barton*[5] was whether section 42.07(a)(7)'s offense of "send[ing] repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another" constitutes speech. The Penal Code defined the phrase "electronic communication" to include transfers of signs, data, or "intelligence of any nature." The court reasoned that sending signs, data, and intelligence did not necessarily involve expressive activity. *Sanders*, 2022 Tex. Crim. App. LEXIS 236, at *32.[6] Accordingly, section 42.07(a)(7) did not implicate the First Amendment. *Id.; Barton,* 2022 Tex. Crim. App. LEXIS 235*,* at *14.

On the same day that it decided *Sanders* and *Barton*, however, the court reached the opposite conclusion for section 42.07(a)(1). *Ex parte Nuncio*, No. PD-0478-19, 2022 Tex. Crim. App. LEXIS 234, at *7 (Tex. Crim. App. Apr. 6, 2022). That section prohibits one with the requisite intent from "initiat[ing] communication *and in the course of the communication mak[ing] a comment, request, suggestion, or proposal that is obscene.*" (emphasis added). The court held there is "no doubt" that making comments, requests, suggestions, or proposals involve "pure speech." *Id.* at *10.

Synthesizing the Court of Criminal Appeals' treatment of section 42.07 guides our review of section 33.07(a). Breaking down the statute into its component parts, we hold that the statute's prohibition on the unauthorized "use" of another's name to create a page does not necessarily involve the expression of ideas, opinions, or information necessary

---

[4] No. PD-0469-19, 2022 Tex. Crim. App. LEXIS 236, at *33 (Tex. Crim. App. Apr. 6, 2022).

[5] No. PD-1123-19, 2022 Tex. Crim. App. LEXIS 235, at *14 (Tex. Crim. App. Apr. 6, 2022).

[6] *See also id.* at 33 ("To be sure, some of those items, such as a writing, an image, and a sound, evoke traditional categories of communication. But the statute does not require the electronic communication to be a writing, an image, or a sound.").

to implicate the First Amendment. *See Sanders*, 2022 Tex. Crim. App. LEXIS 236, at *32; *Barton*, 2022 Tex. Crim. App. LEXIS 235, at *14*; Scott*, 322 S.W.3d at 669*.* We agree with the district court that to the extent any "speech" is affected by section 33.07(a), it is integral to criminal conduct – meaning it may be prevented without running afoul of the First Amendment. *Cf. Ex parte Bradshaw*, 501 S.W.3d 665, 674 (Tex. App.—Dallas 2016, pet. ref'd) (holding that "[a]lmost all conceivable applications of section 33.07(a) to speech associated with the proscribed conduct fall within the categories of criminal, fraudulent, and tortious activity that are unprotected by the First Amendment.").

B. Is section 33.07 content-neutral or content-based?

The Fourteenth Court in *Stubbs* held that section 33.07(b) "reaches some protected speech." *Stubbs*, 502 S.W.3d at 229. While that decision did not discuss *Scott* or have the benefit of the Court of Criminal Appeals' more recent analysis, we hold that the district court properly denied Claycomb's petition even if section 33.07 plausibly touches some speech. We agree with other Texas courts that section 33.07(a), at most, is content-neutral. *See Ex parte Hall*, No. 03-18-00731-CR, 2019 Tex. App. LEXIS 3465, at *14 (Tex. App.—Austin May 1, 2019, pet. ref'd); *Ex parte Maddison*, 518 S.W.3d 630, 639 (Tex. App.—Waco 2017, no pet.); *Stubbs*, 502 S.W.3d at 231; *Bradshaw*, 501 S.W.3d at 677. The Fifth Court was correct when it observed the following in *Bradshaw*:

> The specific subject matter of a web page or message is irrelevant under [section 33.07(a)]. It does not matter what particular topic or viewpoint is communicated or whether the communication is true or false. It also does not matter if the name or persona of the other person appears in the body of the message. It is, rather, the deliberate use of the name or persona of another person without consent and with the proscribed intent in creating any type of web page or message that is forbidden.

501 S.W.3d at 676 (alteration added).  We reject Claycomb's argument that section 33.07

violates strict scrutiny review[7] as a content-based restriction on speech.

On appeal, Claycomb alternatively argues that if the statute is content-neutral, it is

nevertheless unconstitutionally overbroad because its impermissible applications are

substantial in comparison to the statute's plainly legitimate sweep over unprotected

speech and conduct.  We hold that Claycomb's overbreadth challenge was not preserved

for appellate review because he did not make a timely, specific complaint to the trial court.

*Nuncio*, 2022 Tex. Crim. App. LEXIS 234, at *4.  As the Court of Criminal Appeals has

written for at least thirty years:

> To avoid forfeiting a complaint on appeal, the party must "let the trial judge
> know what he wants, why he thinks he is entitled to it, and to do so clearly
> enough for the judge to understand him at a time when the judge is in the
> proper position to do something about it."

*Id.* at *5 (quoting *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009); *Lankston*

*v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).  The Court of Criminal Appeals in

*Nuncio* showed how the appellant preserved his overbreadth argument in the trial court.

2022 Tex. Crim. App. LEXIS 234, at *6.  However, Claycomb's pre-trial application for writ

of habeas corpus solely argued that "[s]ection 33.07(a) restricts speech based on its

content."[8]  Accordingly, we hold that Appellant's objection lacked the necessary specificity

to preserve the overbreadth issue for appeal.  TEX. R. APP. P. 33.1(a).

---

[7] *See Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 165 (2015) (applying strict scrutiny level of scrutiny to content-based restriction on speech).

[8] Citing *New York v. Ferber,* 458 U.S. 747 (1982), Claycomb mentions that the trial court should examine whether the statute "restricts a real and substantial amount of protected speech[,] in relation to the unprotected speech that it restricts."  However, this portion of his application relies on an assumption that the statute is content-based.

## C. Is section 33.07 unconstitutionally vague?

Finally, we consider Claycomb's argument that section 33.07 is unconstitutionally vague. *See Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 494 (1982) (announcing order of argument when a party brings a facial challenge on both overbreadth and vagueness grounds). A statute is vague if persons of common intelligence are incapable of deciphering what conduct is prohibited. *See Watson v. State*, 369 S.W.3d 865, 870 (Tex. Crim. App. 2012).

As with an overbreadth challenge, Claycomb failed to complain in the trial court about the alleged vagueness of section 33.07. Therefore, the complaint has not been preserved for appellate review. TEX. R. APP. P. 33.1(a); *In re Commitment of Halsell*, No. 09-04-00393-CV, 2005 Tex. App. LEXIS 4025, at *3 (Tex. App.—Beaumont May 26, 2005, no pet.).

## Conclusion

Having overruled all of Appellant's issues on appeal, we affirm the order of the trial court.

Lawrence M. Doss
Justice

Publish.

10