# NO. 12-12-00021-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *HOWARD MARK HUFFMAN,*<br>*APPELLANT* | § | *APPEAL FROM THE 3RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Appellant, Howard Mark Huffman, appeals his convictions for aggravated kidnapping and aggravated sexual assault.   In two issues, he challenges the sufficiency of the evidence to support his convictions.   We affirm.

## BACKGROUND

Appellant was indicted for aggravated kidnapping and aggravated sexual assault.   The indictment also included an engaging in organized criminal activity allegation.   Appellant pleaded not guilty, and the matter proceeded to a jury trial.

The victim, "Penny Jones," (a pseudonym) testified that she was "raped" by three men–Dustin Huffman, who is Appellant's nephew; Victor Wade Davis; and James Henderson.   All three men were named in the indictment.   "Jones" testified in detail about the sexual assaults and also about the events that occurred before and after the assaults.   An emergency room doctor and a SANE (sexual assault examiner nurse) nurse testified that "Jones's" injuries were consistent with her   description of the sexual assaults.

Ultimately, the State abandoned the engaging in organized criminal activity allegation, and the jury found Appellant guilty of aggravated kidnapping and aggravated sexual assault under the

law of parties.   The jury then sentenced Appellant to imprisonment for ninety-nine years and a ten thousand dollar fine on each count.   This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, Appellant argues that the evidence is factually insufficient to support the jury's guilty verdict.   The court of criminal appeals has held that the *Jackson v. Virginia* standard is the only standard a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt.   *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).   Accordingly, we will apply only the *Jackson* standard in addressing this issue.   *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979).

### Standard of Review and Applicable Law

The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence.   *See Jackson*, 443 U.S. at 315-16, 99 S. Ct. at 2786-87; *see also Brooks*, 323 S.W.3d at 895.   Evidence is not legally sufficient if, when viewing the evidence in a light most favorable to the verdict, no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.   *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007).   Under this standard, a reviewing court does not sit as a thirteenth juror and may not substitute its judgment for that of the fact finder by reevaluating the weight and credibility of the evidence.   *See Brooks*, 323 S.W.3d at 899; *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).   Instead, a reviewing court defers to the fact finder's resolution of conflicting evidence unless that resolution is not rational in light of the burden of proof.   *See Brooks*, 323 S.W.3d at 899-900.   The duty of a reviewing court is to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime.   *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge.   *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would be one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant

2

was tried." *Id*.

Aggravated sexual assault, as applicable here, is the intentional penetration of the sexual organ of a person without that person's consent by the sexual organ of the actor if the person (1) by acts or words places the victim in fear that death will be inflicted on any person or (2) acts in concert with another who engages in the sexual assault directed toward the same victim and occurring during the course of the same criminal episode. TEX. PENAL CODE ANN. § 22.021(a)(1)(A)(i), (2)(A)(ii), (iii), (v) (West Supp. 2013). Appellant challenges only the sufficiency of the evidence to establish penetration by all three men named in the indictment.

**Analysis**

Based upon our review of the record, we conclude the State introduced evidence of penetration by the three men. "Jones" identified Dustin Huffman, Victor Wade Davis, and James Henderson as the men who "raped" her. The term "rape" has been defined as "nonconsensual sexual intercourse accomplished by a male with a female. . . ." *Boston v. State*, 642 S.W.2d 799, 801 (Tex. Crim. App. 1982). "Jones" also testified that the three men wore condoms during the sexual assaults. Additionally, the SANE nurse testified that "Jones" told her three men had penetrated her. "Jones" also told her the men wore condoms and had sex with her. The nurse stated further that the injuries to "Jones's" vaginal area were consistent with "Jones's" description of the sexual assaults.

Viewed in the light most favorable to the verdict, a rational jury could have concluded from this evidence, beyond a reasonable doubt, that "Jones" was penetrated by Dustin Huffman, Victor Wade Davis, and James Henderson. Therefore, the evidence is sufficient to support the element of penetration. Appellant's first issue is overruled.


## THE LAW OF PARTIES

In his second issue, Appellant contends that the evidence introduced at trial is insufficient to support the jury's finding that he was guilty under the law of parties.

**Standard of Review and Applicable Law**

As we stated in our discussion of Appellant's first issue, we apply the *Jackson v. Virginia* legal sufficiency standard when reviewing the sufficiency of the evidence to support a criminal conviction. *See Brooks*, 323 S.W.3d at 895; *see also Jackson*, 443 U.S. at 315-16, 99 S. Ct. at 2786-87.

A person is criminally responsible for an offense committed by the conduct of another if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. . . ." TEX. PENAL CODE ANN. § 7.02 (a)(2) (West 2011); *see Leza v. State*, 351 S.W.3d 344, 357 (Tex. Crim. App. 2011) (Section 7.02, subsections (a) and (b) describe "alternate manners by which an accused may be held accountable for the conduct of another who has committed the constituent elements of a criminal offense. . . .").

**Analysis**

Appellant contends that neither the mere presence at the scene of a crime or the mere knowledge that an offense is about to be committed by others will make him a party to the offense. While we agree with this statement of the law, the record in this case supports the jury's findings that Appellant's role was not so limited.

The aggravated kidnapping and aggravated sexual assaults occurred on Appellant's property, which is located in rural Anderson County. The evidence showed that Appellant manufactured and sold methamphetamine on the property. Among the various outbuildings and sheds on the property was a decrepit camper, which "Jones" described as the "driving kind." It is in this camper that the sexual assaults occurred.

"Jones" testified that she went to Appellant's property to recover some money that had been taken from her child support debit card without her permission by Appellant's nephew, Dustin Huffman. She testified that, after she confronted Dustin and repeatedly and loudly demanded the return of her money, Appellant came out of his house to find out what was going on. When "Jones" told Appellant what had happened, he told Dustin to return "Jones's" money to her and then went back inside his house.

A short time later, "Jones" knocked on the door of Appellant's house. Her boyfriend, "Wes," opened the door slightly, but when she asked to come inside, he told her Appellant said she was not allowed inside. She stayed outside for several hours because the location was remote and she had no way to leave. She began to suspect that she going to "get hurt" because everything was "too secretive" and the place was unusually quiet.

Sometime after midnight, Wes came outside, grabbed her "by the hair" and started dragging her toward the camper. Although she repeatedly "punched" him in the back as he dragged her, he did not release her and forced her to enter the camper. After they were inside, she

and Wes argued, and she learned that he believed she was "a cop." Their argument was interrupted by the ringing of a cell phone. She could tell by the cell phone's distinctive ring that the phone belonged to Appellant. She could not hear Appellant's side of the conversation, but she heard Wes say, "[Y]es, I have her in here." She then saw "headlights" coming down the sand drive to the camper.

The camper door was open, and "Jones" started to walk out. Dustin immediately appeared in the doorway, told her she was not going anywhere, and pushed her backwards into the camper. She soon saw flashlights, and Appellant, Victor Wade Davis, and James Henderson entered the camper. Appellant asked "Jones," "Why are you doing this [?] [A]ll I've ever done is try to help you." She interpreted this as meaning that he thought she had turned them in to law enforcement. Appellant then stepped out of the camper, and the door was shut. She believed he stayed outside because she did not see his flashlight moving away from the camper. She could not leave because there was not room for her to move away from the men.

"Jones" testified further that she was then "raped." She described in detail the methodical, violent manner in the sexual assaults were carried out while she screamed and struggled to get away. She identified the perpetrators as Dustin, Victor Wade Davis, and James Henderson. After the sexual assaults, Wes wanted to speak to her before the next act, which "Jones" thought would be her murder. "Jones" and Wes went to the camper door, which was firmly closed. Wes then said, "[A]ppellant], it's me, Wes, open the door." The door then opened, and Appellant was standing outside. "Jones" stated that anyone standing outside the camper could have heard her screams.

Viewed in the light most favorable to the jury's verdicts, a rational fact finder could have concluded from this evidence, beyond a reasonable doubt, that (1) Appellant directed the aggravated kidnapping of "Jones," (2) he aided the aggravated kidnapping by providing the place where she was confined and keeping the camper door shut so that she could not escape, (4) he encouraged or aided the aggravated sexual assaults by providing Dustin, Victor Wade Davis, and James Henderson access to the camper, and by acting as a lookout while the sexual assaults were occurring. Therefore, the evidence is sufficient to support the jury's verdicts that Appellant was guilty of aggravated kidnapping and aggravated sexual assault under the law of parties. Appellant's second issue is overruled.

## DISPOSITION

Having overruled Appellant's two issues, we *affirm* the judgment of the trial court.

**SAM GRIFFITH**
Justice

Opinion delivered December 20, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**DECEMBER 20, 2013**

**NO. 12-12-00021-CR**

**HOWARD MARK HUFFMAN,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 3rd District Court
of Anderson County, Texas (Tr.Ct.No. 30043)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Sam Griffith, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*